# Richmond.

## CLARK v. COMMONWEALTH.

### January 18, 1923.

1. EXCEPTIONS, BILL OF—*Time When Taken Must Appear from the Record.*—
   It must affirmatively appear that a bill of exception was taken within
   the time prescribed by law or it forms no part of the record.

2. EXCEPTIONS, BILL OF—*Time When Taken—Bill Not Bearing Date As-
   sumed to Have Been Taken at the Same Time as Those Bearing Date—
   Case at Bar.*—In the instant case there were four bills of exception.
   Bills numbered 2, 3, and 4. All bore a date within the time pre-
   scribed by law. No. 1 bore no date.

   *Held:* That it would be presumed in the absence of evidence to the con-
   trary that No. 1 was signed at the same time as the others.

3. ASSIGNMENT OF ERRORS—*Trivial Assignment.*—The action of the trial
   court in amending an instruction offered by the defendant was as-
   signed as error. On oral argument counsel for appellant stated that
   his objection to the amendment was "so narrow" that he "was al-
   most inclined to waive it."

   *Held:* That, under these circumstances, it was not necessary to con-
   sider the assignment.

4. BURGLARY—*Car Breaking—Instructions—Breaking with Intent to Steal
   and Actual Stealing.*—An indictment contained a single count, and
   charged defendant with breaking and entering a certain railroad car
   with intent to commit larceny therein, and the larceny from the car
   of certain enumerated articles. Accused asked an instruction that
   should the jury find the accused guilty of breaking and entering the
   car with intent to steal, and also guilty of stealing the property, they
   could bring in a verdict for only one of the offenses.

   *Held:* That it was not error to refuse this instruction, as it told the
   jury that if the accused broke and entered the car with intent to steal,
   and stole the property, they could bring in a verdict for only one of
   the offenses, when in fact only one offense was committed if the act
   was continuous.

5. BURGLARY—*Car Breaking—Larceny—Conviction of Either Offense.*—
   Where the accused is charged with breaking and entering with intent
   to commit larceny, and the commission of the larceny, he might be
   convicted of either offense but not of both.

6. BURGLARY—*Car Breaking—Larceny—When Offense of Car Breaking Com-
   plete Act—Car Breaking and Larceny as One Continuous Act.*—Car

breaking with intent to commit larceny would be complete under section 4439 of the Code of 1919 whether the larceny was actually committed or not, but it is permissible to charge not only the breaking and entering with intent to commit larceny, but also the larceny, at the same time, as one continuous act; the charge of larceny in such case being the best evidence of the intent with which the breaking was committed. Where the breaking and entering with intent to commit larceny and the commission of the larceny are one continuous act, the accused can only be convicted of the offense of breaking and entering with intent to commit larceny, and but one penalty is annexed to that offense, which is confinement in the penitentiary not less than one nor more than ten years, or confinement in jail not exceeding twelve months and a fine not exceeding $500.

7.  BURGLARY—*Car Breaking—Punishment—Instructions—Harmless Error.*—In the prosecution for car breaking with intent to commit larceny the court instructed the jury that if they found the accused guilty, his punishment should be not less than one nor more than ten years in the penitentiary, "or, in the discretion of the jury, confinement in jail for twelve months and a fine not exceeding $500."

*Held:* Error, as the statute plainly says, "or, in the discretion of the jury, confined in jail *not exceeding* twelve months and fined not exceeding $500." But as the jury did not exercise its discretion, but fixed a penitentiary sentence, the error was harmless.

8.  RECEIVING STOLEN GOODS—*Indictment—Charge of Larceny.*—Receiving stolen goods, knowing the same to be stolen, may be charged as larceny.

9.  JURY—*Verdict—Polling the Jury.*—Polling the jury simply to ascertain if each juror assents to the verdict as rendered has been so universally assented to, and for such a length of time in this jurisdiction, as to be regarded as a matter of right.

10. JURY—*Polling the Jury—Polling on Question of How Verdict Arrived at—Case at Bar.*—In the instant case, an indictment for car breaking with intent to steal, and with stealing from the car, accused asked that each juror be polled as to whether he found accused guilty of the combined offenses and whether he fixed his punishment for each offense.

*Held:* That the trial court properly refused the request of accused, as there was but one count in the indictment, and the verdict was directly responsive to the indictment.

11. VERDICT—*Motives of Jury—Testimony of Jurors.*—The deliberations of the jury and the motives which actuate them in arriving at a verdict are secret and usually even jurors themselves will not be allowed to impeach their verdict by testimony as to secret motives which controlled them, or misunderstanding instructions of the court, the effects of the evidence, the measure of their verdict, and the like.

12. BURGLARY—*Car Breaking—Defense of Intoxication—Evidence Sufficient to Support Verdict of Guilty.*—In the instant case, a prosecution for car

breaking, there was abundant evidence to support the verdict, if the jury believed the testimony of the witnesses and that the prisoner was capable of entertaining a criminal intent. There was evidence that accused was drinking heavily at the time the offense was committed, but the jury was fully and correctly instructed as to the mental incapacity from drink which will excuse one from liability for his acts, and also upon the question of accomplice testimony.

*Held:* That these subjects were peculiarly within the province of the jury, and their conclusion could not be said to be plainly wrong.

Error to a judgment of the Circuit Court of Chesterfield county.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg* and *J. M. Turner,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

Burks, J., delivered the opinion of the court.

The accused was convicted of breaking and entering a railroad car with intent to commit larceny and sentenced to confinement in the penitentiary for ten years.

[1, 2] The Attorney-General makes the objection that bill of exception No. 1, containing the evidence and the instructions of the court is no part of the record because it does not affirmatively appear to have been taken within the time prescribed by law, citing *James* v. *Commonwealth,* 133 Va. 723, 112 S. E. 761, and *Kelly* v. *Trehy,* 133 Va. 160, 112 S. E. 757. It was necessary for this to appear, but the record sufficiently shows that fact. The final judgment was entered May 31, 1921, and if the bill was filed on or before July 25, 1921, it was

within time.   Four bills of exception were taken in the
case.   Bills numbered 2, 3 and 4 all bear date July 25,
1921.   Bill No. 1 bears teste "This ........ day of July,
1921."   There is nothing in the record to suggest that
all of the bills were not signed on the same day.   They
are numbered consecutively 1, 2, 3, 4, and we cannot
presume that the last three were signed at an earlier
date than No. 1.   The condition of the record is such
that, in the absence of evidence to the contrary, we
must assume that all of them were signed at the same
time, to-wit: July 25, 1921, which was within the time
prescribed by law.

[3]  The first assignment of error is to the action of the
trial court in amending an instruction offered by the de-
fendant.   On the oral argument, counsel for the ac-
cused stated that his objection to the amendment was
"so narrow," that he "was almost inclined to waive it."
Under these circumstances, we have no inclination to
burden this opinion with a discussion of it.

[4-6]  The second assignment of error is to the refusal
of the trial court to amend an instruction.   The indict-
ment contains a single count, and charges the defendant
with breaking and entering a certain railroad car with
intent to commit larceny therein, and the larceny from
the car of certain enumerated articles of personal prop-
erty of the aggregate value of $156.00.   After the evi-
dence had been submitted, instructions given and the
case argued and submitted to the jury, the jury retired
to their room to consider of their verdict, and after a
while returned into court and asked to be instructed as
to the punishment to be inflicted.   Thereupon, the
court instructed them that if they found the accused
guilty of breaking and entering the car with intent to
commit larceny, his punishment should be not less than
one nor more than ten years in the penitentiary, or in

the discretion of the jury confinement in jail for twelve months and a fine not exceeding $500.00; and if they found him guilty of the larceny of $50.00 worth of property, then his punishment should not be less than one nor more than ten years in the penitentiary.  Thereupon, the accused asked the court to give the following instruction: "The court instructs you that should you find the accused guilty of breaking and entering the car with intent to steal, and also guilty of stealing the property as set forth in the indictment, then you can bring in a verdict for only one of the offenses according to your discretion."

In *Speers' Case*, 17 Gratt. (58 Va.) 570, 572, speaking of a similar count in an indictment, it is said: "The first count, however, charges the statutory offense of housebreaking, with a two-fold averment of an intent to steal, and of the actual theft.  The averment of the intent to steal is sufficient under the statute; so also, where the felony has actually been committed, it seems sufficient to allege the commission; as that is the strongest evidence of the intention.  But the intent to commit a felony and the actual commission of it, may both be alleged; and, in general, this is the better mode of statement.  1 Hale 560; 2 East P. C., c. 15, sec. 25, p. 514; *Rex* v. *Furnival*, Russ. & Ry. 445.  Had this count contained only the averment of the intent, I presume there would be no ground for the present complaint.  If it had omitted this averment and substituted it by an allegation of actual theft alone, the case would be different from the present; and upon that I am not called upon to give an opinion.  But here we have this complex crime set forth by a three-fold specification of the housebreaking, the intent to steal and the actual theft.  How shall such a count be construed? Shall it be taken as a count for felonious housebreak-

ing, or as a joint count for housebreaking and larceny? And in case of a general finding under such a count, shall the conviction be of housebreaking or of larceny, or of both?    These questions, I think, are easily solved upon authority and the well-established principles of criminal pleading.''    After examining cases from other jurisdictions, it is said: "If, therefore, this count had stood alone, we would be bound by these authorities to treat it as a count for the statutory offense of house-breaking, and to accept a general verdict of guilty under it as a conviction of that offense, and not of larceny.'' Later on, however, it is said: "In case of a similar count in burglary, it has been held the burglary may be nega-tived and the larceny found; so that if there be a general verdict of acquittal, no future trial could be had for the larceny comprised in the charge; but a general finding of guilty would lead to a sentence of housebreaking, and not larceny.''

In *Vaughan's Case*, 17 Gratt. (58 Va.) 576, 579, after stating that the charge of larceny in an indictment of this kind is introduced in aid of the allegation of intent, and of the particularity with which the larceny should be alleged, it is said: "It is always better, however, to lay the charge of larceny in proper form, to avoid objec-tion in case the prisoner should, as he may, on such a count as this, be found not guilty of the breaking and entering, but guilty of the larceny.''

In *Benton's Case*, 91 Va. 782, 21 S. E. 495, it is said: "Housebreaking with the intent to commit larceny, and grand larceny are distinct offenses under the law, and to each is affixed its own penalty, but they may be and often are one continued act, and may be charged in the same count of an indictment.    Upon such count the accused may be found guilty of either of the offenses, but there can be only one penalty imposed.    *Com.* v.

*Hope,* 22 Pick. 1; *Josslyn* v. *Com.,* 6 Metcalf, 236; and Bish. on Cr. Pr., Vol. 2, sec. 144. If it is desired to punish for both offenses in a case of this kind, there must be inserted in the indictment a separate count for the larceny, as was done in *Speers' Case,* 17 Gratt. (58 Va.) 570."

It would appear from these authorities that where the accused is charged with breaking and entering with intent to commit larceny, and the commission of the larceny, he might be convicted of either offense but not of both. The carbreaking with intent to commit larceny would be complete under section 4439 of the Code, whether larceny was actually committed or not, but, as pointed out in *Benton's Case,* it was permissible to charge not only the breaking and entering with intent to commit larceny, but also the larceny, at the same time, as one continuous act; the charge of larceny in such case being the best evidence of the intent with which the breaking was committed. Where the breaking and entering with intent to commit larceny and the commission of the larceny are one continuous act, the accused can only be convicted of the offense of breaking and entering with intent to commit larceny, and but one penalty is annexed to that offense, which is confinement in the penitentiary not less than one nor more than ten years, or confinement in jail not exceeding twelve months and a fine not exceeding $500.00. The proposed amendment of the court's instruction did not make this distinction, and hence was confusing and misleading. It told the jury that if the accused broke and entered the car with intent to steal and stole the property, they could bring in a verdict for only one of the offenses, when in fact only one offense was committed if the act was continuous. It was not error, therefore, to refuse the amendment which was asked. If the

amendment had told the jury that if they believed the accused was guilty of breaking and entering the car with intent to steal, and that he also at a different time and on a different occasion stole property as set forth in the amendment, that they could not find him, under that indictment, guilty of both offenses, it would have been correct.  The cases we have cited hold that an accused person, upon charge of a composite offense like this, might be convicted of the larceny without the breaking and entry, but the instruction nowhere told the jury that he might be found guilty of both.  In fact it told them just the contrary.

Under the evidence of this case the jury might have believed that at the time of the breaking and entry of the car the accused was so incapacitated by drink as not to be capable of entertaining a criminal intent, and if so he could not be found guilty of a breaking and entry, but the jury might have been of the opinion that while not of sufficient capacity at the time the car was broken and entered, he was of sufficient capacity at a later period when found in the possession of the goods together with the other parties who united in the breaking. Under this state of facts the jury might have found him guilty of grand larceny, but not of breaking and entering.  As a matter of fact, however, the jury returned a general verdict of guilty as charged in the indictment, which was of the composite offense of breaking and entering with intent to steal, and stealing, to which no penalty was imposed except that provided for those found guilty of simply breaking and entering with intent to commit larceny.

[7] The latter part of the instruction "or, in the discretion of the jury, confinement for twelve months and a fine not exceeding $500.00" is plainly wrong, as the statute plainly says "or, in the discretion of the jury,

32

confined in jail *not exceeding* twelve months and fined not exceeding five hundred dollars." Code, section 4439. But as the jury did not exercise its discretion, but fixed a penitentiary sentence, the accused could not have been injured by the error, and it was harmless.

[8] Receiving stolen goods, knowing the same to be stolen, may be charged as larceny. Code, section 4448.

The third assignment of error was to the refusal of the trial court to permit a special poll of the jury.

[9-11] Polling the jury simply to ascertain if each juror assents to the verdict as rendered has been so universally assented to, and for such a length of time in this jurisdiction, as to be regarded as a matter of right. But that is not what the accused asked for and was refused. He asked "that each juror be polled as to whether he found the accused guilty of the combined offenses and whether he fixed his punishment for each offense." This he had no right to ask, and the trial court properly refused the request. There was but one count in the indictment, and the verdict was directly responsive to the indictment when it stated, "We, the jury, find the accused guilty as charged in the indictment and fix his punishment in the penitentiary at two years," and if each juror gave his assent to this verdict, the accused had no right to inquire how or why he arrived at it. The deliberations of the jury and the motives which actuate them in arriving at a verdict are secret and usually even jurors themselves will not be allowed to impeach their verdict by testimony as to secret motives which controlled them, or misunderstanding instructions of the court, the effects of the evidence, the measure of their verdict and the like. *Taylor* v. *Commonwealth*, 90 Va. 109, 17 S. E. 812; *Read's Case*, 22 Gratt. (63 Va.) 924; *Washington, etc., Co.* v. *Goodrich*, 110 Va. 692, 66 S. E. 977; *People* v. *Kloss*, 115 Cal. 567,

47 Pac. 459; *Palmer* v. *People*, 138 Ill. 356, 28 N. E. 130, 32 Am. St. Rep. 146; Beale Cr. Pl. & Pr., sec. 255 and cases cited.

In *State* v. *Tomlinson*, 7 N. D. 294, 74 N. W. 995, when the verdict was brought into court, the court asked the jury if that was their verdict and they said that it was. Subsequently, the jury was polled, and one juror, before answering the question if that was his verdict, said he wished to make an explanation, but the court deeming an explanation unnecessary, required him to vote and he voted "Yes." After the verdict was received and the jury discharged, the prisoner, on motion for a new trial, filed the affidavits of this and other jurors to the effect that such jurors, at the time the verdict of guilty was returned into court, did not think the accused was guilty of the offense charged, and that they had assented to the verdict because they were tired out by their long confinement as jurors, and because they thought their explanation to the court made when they came into court with their verdict would insure a sentence less onerous to the defendant than the burden of a second trial would be. The new trial was refused by the trial court, and its action was approved by the Supreme Court of the State, the latter amongst other things, saying: "The trial at that stage had reached a point where conclusions were wanted, and where debate and explanations were irrelevant and out of order. A contrary rule would, in our judgment, directly lead to confusion and vexatious delays in the administration of justice and means of trial by jury." *Bean* v. *State*, 17 Tex. App. 60; *Winslow* v. *State*, 76 Ala. 42, 5 Am. Cr. Rep. 43.

[12] The last assignment of error is to the action of the trial court in refusing to set aside the verdict as contrary to the law and the evidence. It would serve

no useful purpose to recite the evidence. There was abundant evidence to support the verdict, if the jury believed the testimony of the witnesses, and that the prisoner was capable of entertaining a criminal intent. There was testimony that the accused was drinking heavily at the time the offense was committed, and doubt was expressed by a number of the witnesses as to his capacity to entertain a criminal intent at the time, and two of his accomplices, amongst others, testified against him. But at the instance of the accused the jury was fully and correctly instructed as to the mental incapacity from drink which will excuse one from liability for his acts, and also fully cautioned about receiving the testimony of accomplices and the temptation to them to exculpate themselves by laying the crime upon another. These subjects were peculiarly within the province of the jury, and their conclusion cannot be said to be plainly wrong.

We find no error in the judgment of the trial court and it is accordingly affirmed.

*Affirmed.*